Our final case today is Karimi v. Holder. Mr. Belszyk? Yes, Your Honor. Thank you. Is that close? Very close. Good to have you here. Thank you, Your Honor. It's a pleasure. May it please the Court, my name is David Belszyk of Jones Day, and I represent Mr. Karimi, the petitioner before the Court. Mr. Karimi is also with me in court today. He's to my left in the front row. Your Honors, Mr. Karimi received asylum in the United States over ten years ago because he and his family were politically persecuted in Afghanistan. The government is attempting to revoke his asylum and deport him back to Afghanistan on the basis of a mere de minimis touching that does not constitute a crime of violence. Because Mr. Karimi did not commit an aggravated felony crime of violence, it was error for the BIA and the IJ to terminate his asylum and order him deported. I'd like to address that under three points before the Court today. Number one, in applying the modified categorical approach, we ask the Court to look at the facts contained in Mr. Karimi's plea colloquy as the facts that necessarily underlie his conviction. Number two, when examining the actual facts pleaded in the plea colloquy, we see that Mr. Karimi admitted to no more than temporarily grabbing someone's hand, maybe for a second, maybe less. It's never clarified. What does the plea colloquy say? Your Honor, the plea colloquy says that Mr. Karimi grabbed the hand of an officer while he was at the station, they were writing his charges. Grabbed the hand. Grabbed her hand. And that he caused no harm whatever. Does the plea colloquy say no harm? It does. The plea colloquy says, grab the hand, no harm. That's what it says. I thought the plea colloquy said, had some additional facts that your client declined to admit to with respect to the movement of the hand. Is that not right? Or the spitting? Well, there are two other facts that the government refers to which did not ultimately underlie Mr. Karimi's plea, and I'll address them both, Your Honor. Number one... What I'm trying to get at is what the plea colloquy shows, if you restrict it just to the Shepard documents, we can look at the plea colloquy. Yes, Your Honor. What he admitted at the plea colloquy. Does that show anything other than grabbing the hand? Well, it shows, of course, that he also pleaded to driving under the influence. Yes, that's the offense. Go ahead. But as regards the assault charge, our contention, Your Honor, is that the only admitted fact underlying the assault plea is that he grabbed someone's hand for an unspecified period of time, causing no harm whatever. Now, it was advanced by the government during the plea colloquy. Now, the grabbing of the hand is in there. Is the unspecified period of time in there? Well, no. There's nothing in there about time. It doesn't say anything at all. That's your embellishment on it then, so I'm trying again to find out what the plea colloquy shows. Grabbing the hand... Yes. Anything else? Causing no harm whatever. Causing no harm for... That's in there. That is. That is in there. All right. Grabbing the hand, causing no harm whatever is in there. Yes. So the question is whether that is a second-degree assault under Maryland law. Is that right? Not exactly, Your Honor, if I may. Not exactly. We agree that that constitutes a misdemeanor assault under Maryland law. That's why Mr. Creamy... All right, so second-degree assault, then it's a question of whether it's a violent second-degree assault. That's correct. Whether or not it is a crime of violence under federal law, under Section 16, such that his asylum could be revoked. But you acknowledge or you take the position that we use the modified categorical approach here. We do, Your Honor. What about, if you look at our Gomez case, are you familiar with Gomez? Perhaps Your Honor could reference the film. Well, it was decided about six months ago, and the court said we didn't get to the modified categorical approach except in limited circumstances. There's a discussion of whether the statute is divisible or not. I'm just trying to find out whether Gomez has anything to do with this or not. Well, Your Honor, I would certainly be happy to review Gomez. I can't speak to it today. Okay. But my understanding is this, that when a statute is divisible, and this court has held numerous times that the section under which Mr. Cremey was convicted is divisible. You say this one is divisible. This court has said that, and this court has applied the modified categorical approach to the particular statute under which Mr. Cremey was convicted. Just to get back to the plea colloquy, there was an attempt by the government to embellish, for lack of a better word, the plea colloquy by alleging that your client also spit on the officer, which he denied. Is that right? That's correct, Your Honor. Okay. There are two other contextual arguments the government advances as far as the facts underlying the plea. Both of them fail. Number one, the government has cited to the allegation that Mr. Cremey may have threatened the officer. That was contained in the officer's statement of probable cause. That fact was never advanced by the state's attorney at Mr. Cremey's plea. It wasn't even put forward as something that the government would attempt to prove at trial. The word threat never appeared in the colloquy. Mr. Cremey was not charged with threatening anyone. He didn't plead to threatening anyone. So under this court's precedent, that is not a fact that necessarily underlies Mr. Cremey's plea to assault, and thus it can't be used out of respect for the Sixth Amendment of the modified categorical approach. The government also advanced the idea that perhaps Mr. Cremey spit at the officer. This was something that was mentioned by the state's attorney during the plea colloquy, but it was specifically accepted, or maybe I should say removed, from Mr. Cremey's actual admissions. Mr. Cremey's attorney clarified at the plea that there was no intent to spit on the officer, essentially that if it happened there would be no mens rea. His attorney went on to say that if any spitting even occurred at all, it would have been a pure accident as a result of Mr. Cremey being intoxicated. Now the judge accepted that amendment to the plea colloquy. The state's attorney never raised any objection or problem with that whatsoever. And if your honors review the plea colloquy, which is in the administrative record, the joint appendix, you'll see that there is a couple of pages of exchange between Mr. Cremey's attorney and the judge, talking about did he grab her hand, did he grab her arm, if he spit on her maybe that wouldn't even constitute an assault. And the outcome of that exchange is Mr. Cremey's counsel's clarification that Mr. Cremey is pleading only to grabbing someone's hand, and that he caused no harm. When we strip away everything else, that's all that is left. And when your honors come down to that fact, which might constitute assault under Maryland's extremely broad assault definition, but it does not constitute a violent, aggravated felony under federal law. And I would direct your honors, of course, to United States v. Johnson, which features in our brief. This court in its white decision has held that the Supreme Court in Johnson determined absolutely that this type of de minimis touching does not rise to the type of active, violent crime that is necessary under Section 16. That recitation that you just summarized with respect to the plea colloquy and the statement of probable cause, that was not part of the colloquy. And I know you may not have had a chance to fully digest this motion, but the government filed a motion to remand this case to the BIA, ostensibly, I guess, for further findings as to exactly what occurred with respect to this conviction. Do you see that as necessary, given what you just said about the undisputed facts of record? I don't, your honor. I have two responses to that motion. Number one, I believe that the government's motion actually certifies several of the arguments that Mr. Cremey has advanced in his brief. Number two, I don't think there's any need for remand because the arguments that are already before this court, the record before this court, already confirms that under the law, Mr. Cremey's conviction cannot be an aggravated felony. So there's no need for remand. I'd like to address those briefly. Why would we want to rule on that if they want to look at it further? Well, your honor, in this case, it's a de novo review, and there's no deference. Well, it is all that, but the BIA, you know, the BIA isn't the one that's supposed to run this stuff. We just get into it when you're claiming they're wrong. Well, I would disagree, your honor, because the BIA is entitled to deference only when it interprets elements of the statutes that it administrates, the immigration statutes. This case turns on an interpretation of federal criminal law. But they want to take another look at it, and they'll give both of you time to look at this Gomez case. Maybe he already had. And other cases since then relate to Gomez here in this court. The thing is, your honor, Mr. Cremey would prevail either way, because if your honors were to apply the categorical approach to the Maryland assault statute, it doesn't contain an element of violence, so he would prevail. Even if your honors apply the modified categorical approach, which this court has done in the past. We've done that in the past, in the Alston case and the Donnell case and all that, but they're all prior to this Gomez case, which you're not familiar with. I understand, your honor. I apologize. No, maybe you can argue it doesn't have anything to do with it. But I know we just, in an unpublished case not long ago, just sent one back to the district court. These mostly come up in the criminal context. We're resentencing in light of Gomez, about whether the modified categorical approach even applies. And was that to this particular Maryland statute, your honor? It is. I think it's exactly the same statute, as a matter of fact. Second degree assault under Maryland law. And that's number 114774, November the 9th, 2012. But it's unpublished. Well, I would certainly review that we note the district court didn't have the benefit of Gomez. For in holding that the modified categorical approach applies only to those statutory offenses in which the statute itself is divisible. Accordingly, we vacate Bailey's sentence and remand to the district court for resentencing in light of Gomez. But anyway, that's what I'm getting at. I don't know whether that's the reason. I haven't even hardly looked at their motion to remand, but they must have some pretty good reason if they're doing it at such a late moment. Maybe they're going to have to help you. Well, I would respond in two parts, your honor. Number one, I would reaffirm my position that even if the categorical approach was applied to the Maryland misdemeanor assault, Mr. Creamer would have to prevail. I understand. I will certainly... And that might well be the case. And that's the point I'm making. It might be a situation where you win under the categorical approach, and the modified categorical approach is not reached. Well, that's sort of what I'm getting at here, that it depends on the impact of this Gomez case, which I wasn't on, and I don't think either Judge Wynn or Judge Diaz were on it either. It looks like our courts started sending them back, at least in the criminal context, for further consideration. Well, I would also mention, your honor, in response to your question, that the Gomez case is not the point that features in the government's motion. What features in the government's motion is their concern that the BIA was citing facts contained in the Statement of Probable Cause that were not in the plea colloquy. Right.  under the Sixth Amendment that those facts shouldn't be considered. I think the government's motion also seems to jettison their waiver argument, since in their motion they raise the fact that Mr. Cremey did in fact assert... They agree with you that the modified categorical approach applies. I believe they do. They do. Then they say it comes to a different result because they can do some other things. Well, they try and draw some extrapolations, your honor. For instance, trying to liken this to resisting arrest, but that's not what happened. That's not what he was charged with. That's not what he pleaded to. And in fact, I think it's important to note when looking at this court's decision in White that this court also looked favorably on other circuits' decisions that are akin to these circumstances. For instance, in White, this court cited the Second... Excuse me, the Seventh Circuit, which held that, listen, every touch that constitutes a battery cannot be a violent touch. Even more so, this court favorably cited to the Hayes case out of the Tenth Circuit. The Tenth Circuit in that case engaged a hypothetical under a similar assault statute where what if a wife were to point her finger at a husband and the husband batted that hand away? And the Tenth Circuit engaged that hypothetical as an example of something that does not rise to the level of a violent offense. And that is likable to what happened here. Grabbing a hand... Does it matter here that this was a law enforcement officer whose arm was grabbed? Well, it doesn't change the requirement that the crime still must be violent. If it's not violent, the identity of the victim can't in and of itself make it so. I think it's also important to note that there is a subsection under the Maryland Misdemeanor Assault Statute specifically for an assault on law enforcement officers, and that is not what Mr. Creamy pleaded to. He pleaded to the general section of the statute. So I see I'm approaching the time I've reserved for rebuttal, Your Honors. I would make one general point that overlies the considerations in this case I ask the Court to consider. It is important to parse the language involved here. But one can never lose the forest for the trees, as you might say. Leo Cowell and Johnson in the Supreme Court are very good examples of that. Those decisions looked closely at the language of force, use, what it means to use force. But those decisions ultimately and finally resolved on the basis that Congress was trying to define aggravated violent crimes and not just any crime involving force. Congress used very strong language, and they coupled it with very severe circumstances. The termination of a legitimate grant of asylum for someone who fears death if returned to their home country. So when you take that severe language coupled with those severe circumstances, it is appropriate contextually to affirm the holding of the Supreme Court that this type of de minimis contact is just not enough to be violent. Thank you very much, Your Honors. Thank you. Appreciate it very much. Mr. Spurlock? May it please the Court, Matthew Spurlock, on behalf of the United States. As was discussed with Petitioner's Counsel, the respondent in this case respectfully moves that the case be remanded back to the BIA for the reasons stated in our recently filed motion to remand. I would just basically highlight the basic... You filed it yesterday, right? That's correct, Your Honor. What time yesterday? 5 o'clock, Your Honor, I believe. 5 o'clock. Yes, sir. Okay. The basis of the motion is essentially the board in their decision states, for one thing, they specifically state that the petitioner in this case did not dispute that physical force was used in his offense and that that's what he pled guilty to. The board in their decision goes through and, first of all, they apply de novo review of the immigration judge's decision. They find that the immigration judge appropriately exercised the modified categorical approach in this case. And in doing so, they mention facts that support that were found, supposedly, in the modified categorical approach as facts that were clearly discovered in the statement of probable cause. Which is contrary to Al's... Well, what we don't know is, and this is the basis for the remand, is was the board considering those items as the basis for finding this was a violent offense, this was, in fact, a violent force, or were they simply just referencing that as this material that was included as appropriately part of the modified categorical approach? And the argument is that it's not clear. It's not clear if they intended... First of all, did they apprehend in the first place that the petitioner in this case had, in fact, agreed that his force was violent or that he had engaged in physical force and, therefore, violent force under Johnson? If that's the case, and this was actually argued in our brief in the waiver section, is that if that's the case, then if that wasn't properly exhausted, then there's no point in going further in this case because he's an aggravated felon. But after reviewing what's in their statement about the modified categorical approach, talking about matters that were not found in the plea colloquy, that weren't specific to... In fact, if you look at the board's decision, there's no discussion whatsoever of grabbing the police officer's hand in this case or specific to that act. Given that the board doesn't identify that, that that particular act was physical violence, we believe that remand is appropriate in this case. Do you know whether the statute's divisible or not? I don't believe the statute is divisible. I don't believe the statute is divisible. It's not divisible. But we're not asking for remand based on Gomez. You're familiar with Gomez? We're not asking for remand... Are you familiar with Gomez? Not to the extent that we would ask for remand for that basis, on that basis. Well, if Gomez applies, you may not be able to reach the modified categorical approach. That's correct. You may lose on the categorical approach. That's correct. So... In the other... In the sentencing case on the same statute, we sent it back here just a couple months ago. That's correct, Your Honor. And there's no dispute in this case that the immigration judge who made the decision that this was an aggravated felony, the immigration judge out of Baltimore, there's no dispute that she applied the modified categorical approach. She applied it, right. So on remand, what you might have to do if you get a remand would be to look at it under Gomez, and that may be the end of it. That could be, Your Honor, and that might be something that the board would want to consider in addition to the fact... Did they indeed find that the... To use the modified categorical approach. That might be something that the board should consider as well, Your Honor. I would agree with that. And I'm also advised that the Supreme Court's granted cert on one of these issues. Issues that could relate to all this, that of a case out of the non-cert. That's correct, Your Honor. That deals specifically with divisible statutes. Right. So you're on top of it a little bit. I would leave that to the board first to determine whether or not they find this is a divisible statute, and if that line of decisions applies in this case in the first instance before I address it before the court today. But that alone is not our basis for a remand in this case. It's strictly based on... What about his position there that we ought to just go ahead and decide it, use the modified categorical approach, and he's willing to rise or fall on that because he's confident he can win, I guess. I don't believe that... Do you want us to do that? No, Your Honor. I believe that wouldn't be appropriate because... Do you have a right to a remand, or is that rest on our discretion? We don't have a right to remand. It's certainly in the court's discretion, the court's decision whether or not they would like to remand the case if they believe it's appropriate. But we would argue that it's appropriate for administrative decisions, for the administrative agency to... Take a first crack at it. Take a first crack at it. That's correct, Your Honor. But you did take a first crack at it and maybe didn't do it right. That's what you're saying now. I would argue that it's not clear, Your Honor. I would argue that they didn't specify exactly what the physical force was that they were assuming that he did not dispute. It took you a long time to figure out if you wanted to remand. I mean, you wait until the night before after you've written briefs and everything, and we've had law clerks working on this and trying to figure it out. I apologize for the late remand and dispute. Let me ask you this. It seems to me that that argument you're making in that remand is what the other side made and you responded that it had been waived or contested the argument. Something changed yesterday afternoon at about 5 o'clock? That made you decide you would agree with the other side on that particular issue? We don't completely agree with what the other side's saying, Your Honor. But you didn't flip on us, did you? We didn't flip exactly. What we did was we... In your position in this remand, you flipped on us a little bit. The initial waiver argument was based on the statement in the board's decision, which was pretty straightforward, very specific. But your position today is not the same as it was in your brief. The position in the brief was that he never addressed that issue. The board correctly found that, and he didn't raise that. So to that extent, you flipped on us? To some degree, yes, Your Honor. I can't deny that we've... So you're all moving target. So what happened? I don't know what happened yesterday at 5 o'clock. I'm trying to figure out what happened. Apparently, you thought this thing through, but something happened yesterday afternoon. I think the most I can say, Your Honor, is that it didn't happen just at 5 o'clock yesterday. It was more of an ongoing process. That's when your adversary knew about it. You didn't make... Did you call him and tell him you were going to do this? I can say that it was decided in preparation for this oral argument, Your Honor. Were you already in Richmond? Almost, sir, in the car. But you imagine you hadn't done that, and the other side got up and made that argument for a remand or, as an alternative one, then you get up and simply concede the remand, how that might be viewed a little different than the way in which you presented this? Yes, Your Honor. I think the main difference is, if you look at the statement, and opposing counsel, in fact, looked at that statement as well, that the board found he's not even challenging that his act was physical violence, or was physical force involved. And I believe the opposing counsel said that's factually incorrect. And I think my position was that it's not factually incorrect, because, initially, if you look back at the arguments made by the petitioner below with the immigration judge, those arguments are all geared towards the fact that a modified categorical approach doesn't apply. That was the crux of their argument. It wasn't challenging specifically whether or not the grabbing of the hand was violence under Johnson. Every time they raised this thing, they said you all didn't show that it was an aggravated felon. They did. And they raised that consistently through there, and in one of these things,  said grabbing wasn't violent or something. That was in the notice of appeal, Your Honor. And you all say you didn't know anything about it. They didn't raise it. Well, they did raise it. I mean, that's a waiver point. I couldn't make much sense out of it. Well, I think that the one-line question general statement is pushing away one's hand amount to force. I think that can be read in multiple ways. I don't think that necessarily is specific to... You don't think that's raising the issue? That's not preserving the point that what was said at the plea colloquy wasn't enough? I think I'd leave that for the board to decide. If this case is brought back to the board, the board will hopefully have a clearer... I'm just saying that in the context of your all's position, your former position, that they've been waived. Well, keep in mind also... It's like they've waived it all the way through. I mean, they've raised it all the way through. Keep in mind also, Your Honor, that in this case, the petitioner asked to brief the case, was given a continuance to brief the case, and never filed a brief that would have possibly clarified these issues. They did that at one time. And in their motion to reopen and reconsider, they never mentioned was the actual grabbing of the hand amounting to physical force under Johnson, and therefore... At what point did the Shepard documents get in there, the plea colloquy, get into record? When did they get into the record, Your Honor? They were entered by Department of Homeland Security as part of the... You all had them. You gave the records, which that shows what was said. Grabbing the hand. Yes, Your Honor, and that was part of the plea colloquy. Right. But that was never even contested before the immigration judge was that grabbing actually part of the violent felon. Well, you had to show that that grabbing was violent, didn't you? Well, the only thing he contested below was whether or not this was appropriate under the modified category of force. Who was he learning on? It was on the government to prove Palermo convincing evidence. That's right. You said the modified categorical approach, so you all had to show that the grabbing the hand was violent under the context of that second-degree assault statute in Maryland. That's correct. That's correct, Your Honor. But anyway, that's talking about the press release. The question we got, I guess, first of all, is whether to grant your motion to remand or whether to go ahead and decide it for some reason that the petitioner wants us to do. Well, the government would respectfully request that the case be remanded, Your Honor, for the reasons stated in the motion. Appreciate it. Thank you. Thank you very much. Thank you, Your Honor. We do appreciate it. I don't mean to give you a hard time. It sounds to me like you're the store of the emissary. You came down here, they called you in the car and told you this is what you were going to do. Take one for the team. Maybe somebody else we ought to talk to. You tell them we were asking some hard questions about that. I'll do that, Your Honor. We seem to be perturbed about it a little bit. Thank you, Your Honor. Thank you very much. Yes, sir. Mr. Belichick. Thank you, Your Honor. Just briefly, I think that the court has a couple of options before it. And certainly, I intend to read the Gomez case and address it in the response that the court has graciously given me an opportunity to file to this motion by the 31st. But I put a couple of options before Your Honors for consideration. If Your Honors believe that the categorical approach should apply to this particular Maryland statute, then it might be unlikely that the board will do that on the basis of an unpublished decision when there are published... Gomez is published. I'm sorry, Your Honor. I thought you said it was unpublished. Gomez is a published decision and it's been in the law book since August. That's the point I'm making. The question is what the impact of it is. And I'm telling you that we had an unpublished decision in November where our court sent a... in a criminal context, sent one of these second degree assault cases back for reconsideration. I apologize. I misunderstood you, Judge. But I think that there were still two options that remained before the court. If the categorical approach applies such that Mr. Carimi prevails, there is no new evidence. The board's not entitled to deference. The court can rule that now. If the court chooses to apply the modified categorical approach, we contend Mr. Carimi still wins on the basis of what's contained in the colloquy and the court can do that now. If Your Honors have doubt about whether or not Mr. Carimi committed an aggravated felony, then the only thing that the government has asked for is remand. And so I would encourage Your Honors to not give him more than he wants himself and we can continue to contest it before the immigration courts. I don't understand that last part. Well, I just mean if there's any uncertainty among Your Honors as to whether or not Mr. Carimi committed an aggravated felony, then the only thing, the most that the government has asked for here is remand. So I think in that sense... Well, I think the government agrees he didn't commit an aggravated felony under the categorical approach. Well, I think he would have to. Well, I think the government agrees. I take it they agree with that. The question is whether he committed one under the modified categorical approach and the question raised by the Gomez case is whether the modified categorical approach can be utilized or whether it altered the situation. I mean, you haven't read it, but there's a strong dissent in it and there's a lot of good discussion in there about this modified categorical approach and categorical approach and all this stuff. Well, I will address it thoroughly in my response, Your Honor. And it is not the same statute. It's a Maryland statute, but it's not the second degree assault statute of Maryland. The follow-up case, the one I mentioned to you, is the same statute. If I understood your final point, is that in the worst case scenario, there's no basis for affirming this case, is what you're saying? You've read between the lines, Your Honor. Thank you very much. Those two guys wrapped it up for you there pretty well. Thank you, Judge. All right. If there are no further questions, Your Honor. Sure. And we appreciate your work in this case. You've done a good job and we thank you. Well, it was my pleasure. And Mr. Spurlock as well. Thank you very much. Judge, we'll come down and greet counsel and then adjourn court until 9.30 tomorrow morning. The honorable court stands adjourned until tomorrow morning at 9.30. God save the United States and this honorable court.
judges: Robert B. King, James A. Wynn, Jr., Albert Diaz